IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-236 |
| | ) | |
| CHARLES E. ROCHA | ) | |

<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

AND NOW comes the United States of America, by its attorneys, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Leo M. Dillon, Assistant United States Attorney for said district, and represents as follows:

1. On 3/20/13 (Doc. No. 32), the Court entered a Sentencing Order providing for the filing by 7/16/13 of parties' Sentencing Memorandums addressing, inter alia, 18 U.S.C. § 3553(a) factors which counsel deem relevant.

2. The government believes the following § 3553(a) factors are relevant:

a. **18 U.S.C. § 3553(a)(1) - the nature and circumstances of the offense and the history and characteristics of the defendant.** As set forth in the Presentence Investigation Report (PSR), over the 1½-year period from 1/08 to 6/17/09, defendant stole approximately $7,000 from his union employer by charging personal expenses on a union credit card and making falsified voucher entries to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union

(USW) in order to receive unauthorized travel reimbursements (PSR ¶¶1, 4, 20). Defendant engaged in this activity despite no apparent need for this money. He held a high office - Director of the Political Department - in the USW (¶10) and, although he has a 22-year old son (¶44), he has no other dependents, reported $117,272 in adjusted gross income on his 2009 tax return (¶52), and is in good physical condition (¶45) with no history of mental problems (¶46) or substance abuse (¶47). He thus abused the trust of the USW (¶27) which had treated him well - employing him from 1998 until this conduct was discovered in 2009 (¶41), and paying for his attendance at the Harvard University Trade Union Program (¶48).

b. **18 U.S.C. § 3553(a)(2) - the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.** This objective is best served by imprisonment for a high-ranking official who cheated his union by engaging in a course of conduct whereby his personal expenses were charged to and paid by the USW.

c. **18 U.S.C. § 3553(a)(2) - the need for the sentence imposed - (B) to afford adequate deterrence to criminal conduct.** While maximum deterrence can be achieved only by imprisonment, it appears that this objective can also be served by a lesser sanction - since defendant has not only lost his USW position and acquired a federal felony conviction, but also faces a

2

temporary bar from subsequent union employment under 29 U.S.C. § 504.

d. **18 U.S.C. § 3553(a)(2) - the need for the sentence imposed - (C) to protect the public from further crimes of the defendant.** Since defendant has no prior criminal record and since the victim of this "white collar" offense was defendant's employer, it is unlikely that he needs to be incarcerated to protect the public from future criminal conduct by him.

e. **18 U.S.C. § 3553(a)(3) - the kinds of sentences available.** A guidelines range sentence of 0-6 months (PSR ¶56) is appropriate for a union official who stole nearly $7,000 from his employer in 1½ years - where the conduct ended only because it was discovered by the USW.

f. **18 U.S.C. § 3553(a)(4) - the kinds of sentence and the sentencing range established.** At OL 8, CHC I, in Zone A, under U.S.S.G. § 5C1.1(b), a sentence of imprisonment is not required.

The government further notes that, pursuant to 29 U.S.C. § 504, as a result of commission of the instant felony involving misuse of his union position, defendant should be barred from work as a labor organization consultant, advisor or employee for a period of 13 years after this conviction or term of imprisonment, whichever is later, unless the Court sets a lesser

3

period of at least 3 years upon defendant's demonstration of rehabilitation.

  g. **18 U.S.C. § 3553(a)(5) - any pertinent policy statement - (A) issued by the Sentencing Commission.** The only pertinent policy statement appears at U.S.S.G. § 2J1.1, which pertains to the 29 U.S.C. § 504 disability and is addressed infra.

  h. **18 U.S.C. § 3553(a)(6) - the need to avoid unwarranted sentencing disparities among defendants with similar records.** The government is not aware of any cases involving similar fact scenarios which resulted in non-guidelines range sentences.

  i. **18 U.S.C. § 3553(a)(7) - the need to provide restitution to victims of the offense.** No restitution is outstanding since it was previously paid in full (PSR ¶65).

  j. **The 29 U.S.C. § 504 disability.** Defendant's conviction for embezzlement from the union which employed him subjects him to a 13-year bar from union-related employment, pursuant to 29 U.S.C. § 504. This section also permits a disqualified individual convicted after October 12, 1984 to petition the state or federal "sentencing court" in which the conviction occurred to reduce the statutory length of disability to a shorter period. The reduced period may not be less than 3 years following the date of conviction or the end of imprisonment, whichever period is later. 29 U.S.C. §504(a). Unlike an exemption order, which only relieves the disability for service in a

4

particular position, an order reducing the length of the disability to a shorter period exempts the convicted person from disqualification <u>in all prohibited</u> positions described in Section 504.

Herein, defendant seeks a reduction by the sentencing judge to no less than 3 years. The government opposes such a reduction. Defendant, at the time of his embezzlement, was a high-ranking union official (Political Director of the USW) who stole from the union membership which he had been entrusted to represent. Moreover, virtually no time has elapsed since defendant's conviction, and he has not demonstrated why he should be permitted to shortly return to union-related work.

The Labor Management Reporting and Disclosure Act (LMRDA) was enacted in 1959 in order to "correct the abuses which had crept into . . . labor and management and which have been the subject of investigation by the . . . Committee on Improper Activities in the Labor and Management Field for the past several years." Legislative history and purpose of Pub. L. 86-257, 1959 U.S. Code, Congressional and Administrative News, Senate Report No. 187, p. 2318 and House Report No. 741, p. 2424.

This legislation included a bar on union work following conviction. The disability period, originally fixed at 5 years, was extended to 13 years by 1984 amendment of the LMRDA. Pub. L. 98-473, § 803(a). As set forth in <u>Serio v. Liss</u>, 189 F.Supp. 358, 364

5

(D.C. N.J. 1960) aff'd. 300 F.2d 386 (3d Cir. 1961), the purpose of disqualification for 5 (now 13) years was to exclude convicted criminals from elective office in labor organizations and to assure that a previously convicted person has demonstrated, for at least that period, his ability to conduct himself in obedience to the criminal laws free of custody and of custodial supervision before assuming such office. See also <u>Kupau v. U.S. Department of Labor</u>, 597 F.Supp.2d 1113, 1119 (D. Hawaii 2009) (29 U.S.C. § 504 disqualified defendant convicted of money laundering in connection with bribery and cockfighting from a position as a union business agent):

> The statute [LMRDA] was a reaction to "a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" . . . In passing the LMRDA Congress determined that persons who commit serious crimes should not be permitted to hold union office until a significant period of time had elapsed after their punishment.

Legislative history preceding the 1984 amendment indicates that relief by reduction of the length of disability would be available only in rare circumstances. The former Chairman of the Senate Committee on Labor and Human Resources explained that while the amendment increased the period of disqualification, relief by reduction of length of disability was

6

> included to accommodate the rare occasions where a (13) year ban might be considered too harsh. For example, at the time of his conviction of a disqualifying crime, an individual might not be a union member or might not have given any thought to the ramifications of his act with regard to holding office in a union or with a benefit plan. If he were to serve his sentence and subsequently obtain a job which would lead to election to union office, a (13) year ban might be unnecessarily rigid. In such rare circumstances, the judge is given the discretion to reduce the disqualification period to no less than (3) years.

Remarks of Senator Orrin Hatch, 128 Cong. Rec. 32446 (1982); (material in parentheses added).

Courts applying § 504 have not been inclined to reduce the disability period immediately after a defendant's conviction. In <u>Harmon v. Teamsters</u>, 832 F.2d 976, 979 (7th Cir. 1987), J. Posner, in determining that § 504 covered an Iowa deferred-judgment for arson whereby the defendant was placed on 5 years probation, wrote:

> The relevant purpose [of § 504] seems obvious . . . Congress thought that persons who commit serious crimes should not be permitted to hold union office until a healthy period of time had elapsed after their punishment.

And the passage of time does not, without more, warrant § 504 disability relief. In <u>United States v. Cullison</u>, 422 F.Supp.2d 65, 73 (D. D.C. 2006) the Court found that a defendant convicted of crimes stemming from use of his union position to

7

extort members had not sufficiently rehabilitated since his conviction, and was thus not entitled to relief from disability under the LMRDA. The Court found the crimes were severe and defendant's subsequent cooperation with the government (thereby inducing many guilty pleas), care of his autistic son, engagement in doctoral studies and work experience were not rehabilitation.

> The Court is not inclined to assume that the mere passage of time, without something more, is enough to show that petitioner has been rehabilitated and is now entitled to employment involving labor organizations.

As set forth in <u>Cullison</u>, the focus must be on defendant's demonstration of his rehabilitation. See <u>Nass v. Local 348, Warehouse Production, Sales and Service Employees</u>, 503 F.Supp. 217, 220 (EDNY 1980) aff'd. without opinion 657 F.2d 264 (2d Cir. 1981) (certificate of relief from civil disabilities issued by NY state judge at time of defendant's sentence - to pay $500 fine for guilty plea to conspiracy to commit Labor Bribery - did not bar operation of § 504):

> Congress did provide . . . for exemptions from the statutory bar in § 504 in certain cases. However, it is clear that that portion of the statute . . . was intended to apply only after the officer had shown that prior to the [then] five-year bar he had been substantially rehabilitated and could so prove to the satisfaction of the Board of Parole of the Justice Department.

In its Policy Statement at U.S.S.G. § 5J1.1, the Sentencing Commission addressed the collateral consequence of conviction for crimes described in 29 U.S.C. §§ 504 and 1111, wherein it summarized the process for disability reduction but emphasized that disability relief must <u>follow</u> rehabilitation:

> [R]elief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization and the position for which he or she seeks relief from disability.

Herein, the government submits that this Court should conclude that defendant has not demonstrated rehabilitation sufficient to warrant reduction of the 13-year bar.

Title 29, United States Code, Section 504(a) addresses both a potential disability reduction to not less than 3 years, as well as an exemption for work in a particular capacity (covered by regulations at 28 C.F.R. Part 4). Since Department of Justice policy treats disability reduction motions similarly to exemption applications (USAM 9-138.130), in either instance it is necessary for the Department of Labor to investigate the appropriateness of such relief. The U.S. Department of Labor's Office of Labor-Management Standards ("OLMS") has conducted such an investigation and, after noting that only 10 months have passed since defendant was indicted, and finding a lack of evidence demonstrating

9

rehabilitation, OLMS has recommended that any petition at this time for reduction of (or, in the alternative, an exemption from) the 13-year bar be denied.

Pursuant to 28 C.F.R. § 4.5, OLMS requested that Mr. Rocha supply statements from 6 persons attesting to his character and reputation. The defendant supplied these character reference letters and OLMS investigators conducted follow-up interviews of these individuals. Most of the 6 attested to defendant's expression of his remorse:

1. Karen Krueger said that Rocha never expressed remorse for taking money from the union membership, but she did not expect him to tell her he is remorseful since he is a very private person. Rocha has told Krueger that he "wishes this never occurred."

2. Roberto A. Fierro stated that "[Rocha] beat himself up over this" and said "why did I put myself in this?"

3. Kenneth Matthews said that Rocha told him he had gotten sloppy, that he knew what he did was wrong, and that he knew it was union dues money, not his own.

4. Catherine Duvall said Rocha now knows that he crossed the line and "would be the first to say he overstepped."

5. Scott Bates said he and Rocha had multiple conversations and each time Rocha was remorseful; and that he was truly ashamed of his actions.

6. Sean Sinclair said that Rocha has expressed remorse each time they speak and Rocha sounds sincere; Rocha understands

that he took money out of the pockets of people he has dedicated his life to work for and is remorseful; and that he will have to live with that the rest of his life.

Several of these individuals, however, indicated that defendant's remorse may be directed more to the fact that he was caught and has to suffer the consequences, rather than to the nature of his actions:

1. Karen Krueger stated that Rocha is angry at the people who initially accused him.

2. Roberto Fierro related that Rocha said he had a secretary at the Steelworkers who wanted a raise that Rocha was reluctant to give, and that she became upset and reviewed his travel expenses. Fierro is sure that Rocha is, to some degree, sorry for being caught, but he is also sorry for what he did.

3. Scott Bates said Rocha mentioned that the "problem" may have been the result of a disgruntled internal employee and "sloppy bookkeeping." He said that Rocha was ashamed of the charges and, although he wishes he had done so, Bates never asked if Rocha was sorry for getting caught or sorry for what he did.

None of these individuals was able to speak to Rocha's rehabilitation:

1. Karen Krueger could not point to anything specific that Rocha had done to rehabilitate himself.

2. Roberto Fierro made no mention of any changes Rocha had made.

11

3. Kenneth Matthews was unaware if Rocha had taken any formal steps for rehabilitation for his crime.

4. Catherine Duvall was unaware if Rocha had made any personal or rehabilitative changes in his life.

5. Scott Bates did not know what steps Rocha had taken to rehabilitate himself other than speaking with people he associates with.

6. Sean Sinclair was not aware of steps Rocha has taken to rehabilitate himself.

The government believes that it is important to note that remorse and rehabilitation are distinct. The former is an emotion regarding a past misdeed and, in the criminal arena, there are few defendants who are not remorseful - or at least so state at the time of their sentences. The latter, however, is a life change which affects the future, and determines whether a defendant will re-offend. Gauging rehabilitation, particularly at the time of sentence, is much more difficult than assessing remorse - since it is nearly impossible to predict whether a defendant will mend his ways. While most defendants would assure sentencing courts that they will not commit another crime, history teaches that even the best of such intentions are often unmet. Criminal courts frequently deal with recidivists - sometimes including those who appeared least likely to re-offend. (The Sentencing Commission implicitly recognized this flaw in human nature by creating the Criminal History Category matrix of the Sentencing Guidelines.)

Herein, the defendant's submissions fall well short of the necessary demonstration of rehabilitation, i.e., that he so rehabilitated his life and his actions that this Court could find that he would adhere to the highest standards or responsibility and ethical conduct prescribed under the LMRDA. In this regard, the only arguments made on his behalf are the claims that he is remorseful. However, several of these individuals indicated that his remorse may be directed more to the fact that he was caught and has to suffer the consequences, rather than to the nature of his actions.

Without the passage of time from which defendant's rehabilitation can be assessed, and since no disability reduction could take effect for at least 3 years, it is inappropriate to lower the § 504 bar at the time of sentence. Moreover, since he could not take such a position until the minimum 3-year bar has passed, this uncertainty precludes the Court's consideration of defendant's suitability for all prohibited positions described in section 504.

Furthermore, the defendant has not met his burden of clearly demonstrating that a reduction should be granted. A reduction in the application of the 504 bar is different from an exemption from the bar. A petition for exemption requires the petitioner to identify the union position or job for which the exemption is sought. The determination of rehabilitation and the question of granting the exemption can be assessed in light of the

position the petitioner intends to occupy and the fiduciary duty and level of responsibility required. One seeking a reduction in the bar is not required to identify the position or job he wishes to hold. One granted a reduction is thereafter eligible for any position with a labor organization. That being the circumstance, it would appear that one requesting a reduction should clearly demonstrate rehabilitation such that he can be trusted to adhere to the highest standards of conduct required of those with great responsibility and fiduciary duty. As set forth above, Rocha has not met his burden of demonstrating that he is rehabilitated to warrant a reduction or an exemption from the 13-year bar under section 504(a).

The government recognizes that, at guidelines range 0-6 months, the defendant is a likely candidate for probation. If that is the Court's sentence, defendant's prospects for successful completion thereof appear to be good; but no one will know until it occurs whether the defendant will succeed on probation. The government therefore concludes that all of the facts and circumstances indicate it is premature - at the time of sentencing - to determine whether there is a basis to reduce (or, in the alternative, grant an exemption from) the 13-year disability under 29 U.S.C. § 504.

3. As stated in its Position with Respect to Sentencing Factors, the government is aware of no basis for any departure/variance.

4. Finally, pursuant to ¶3 of the Court's Sentencing Order, the government believes that no evidentiary hearing is needed on any matter relevant to sentencing.

WHEREFORE, the government requests imposition of a guidelines range sentence and denial of any motion to reduce (or, in the alternative, for an exemption from) the 13-year disability under 29 U.S.C. § 504.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


s/ Leo M. Dillon
LEO M. DILLON
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 644-2644 (Fax)
Leo.Dillon@usdoj.gov
PA ID No. 25806